James E. Fitzgerald (Wyoming State Bar #5-1469)
Sharon Fitzgerald (Wyoming State Bar #5-1768)
THE FITZGERALD LAW FIRM
2108 Warren Ave.
Cheyenne, Wyoming 82001
Telephone: (307) 634-4000
Facsimile: (307) 635-2391

William R. Sieben (Minnesota State Bar #100808)
Paul E. Godlewski (Minnesota State Bar #35567)
Alicia N. Sieben (Minnesota State Bar #089640)
SCHWEBEL GOETZ & SIEBEN, P.A.
5120 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2246
Telephone: 612-377-7777
Facsimile: 612-333-6311
(*To be admitted Pro Hac Vice*)

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAY 22 2009

Stephan Harris, Clerk
Cheyenne

Attorneys for Plaintiffs.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

MICHAEL J. FREIDEL, JOANNE R.
FREIDEL, individually and as Guardian
and Conservator of MICHAEL J.
FREIDEL, KELSEY FREIDEL, JERROD
FREIDEL, JACKSON FREIDEL, KYLEN
FREIDEL and JOANNE R. FREIDEL as
parent and natural guardian of HAILEY
FREIDEL,

Plaintiffs,

v.

BRIDGESTONE CORPORATION,
BRIDGESTONE AMERICAS TIRE
OPERATIONS, LLC, formerly known as
BRIDGESTONE FIRESTONE NORTH
AMERICAN TIRE, LLC, FIRESTONE TIRE
AND RUBBER COMPANY,
BRIDGESTONE AMERICAS, INC., a
subsidiary of BRIDGESTONE
CORPORATION, AND GENERAL
MOTORS CORPORATION;

Defendants.

CIVIL ACTION NO.: 09CV 111

## COMPLAINT

COMES NOW plaintiffs and for their complaint against defendants state and allege as follows:

### JURISDICTION AND VENUE

1

Jurisdiction of the above-named Court is invoked over Plaintiff's claim pursuant to 28 U.S.C. Section 1332 (a) (2) on the grounds of diversity of citizenship and jurisdictional amount.

2

The amount in controversy exceeds the sum of Seventy-Five Thousand and no/100 Dollars ($75,000.00) exclusive of costs and interest.

3

Venue of this action is properly in the United States District Court for the District of Wyoming, under the facts set forth herein pursuant to 28 U.S. C. § 1391 (a).

### JURY DEMAND

4

Plaintiffs hereby demand a jury trial of all issues pursuant to FRCP 38.

### PARTIES

5

Plaintiffs are individual citizens of South Dakota, current residents of Vermillion, South Dakota;

Plaintiff Michael J. Freidel was born on July 14, 1956.

2

Plaintiff Joanne Freidel was born on October 14, 1958. Joanne Freidel was appointed Guardian and Conservator of Michael J. Freidel on May 16, 2007. (attached Exhibit 1).

Plaintiff Kelsey Freidel was born on October 20, 1984.

Plaintiff Jerrod Freidel was born on March 14, 1989.

Plaintiff Jackson Freidel was born on March 14, 1989.

Plaintiff Kylen Freidel was born on March 29, 1991.

Plaintiff Hailey Freidel was born on March 20, 1997.

6

Defendants Bridgestone Corporation, Bridgestone Americas Tire Operations, LLC, formerly known as Bridgestone Firestone North American Tire LLC, Firestone Tire and Rubber Company, and Bridgestone America's, Inc., a subsidiary of Bridgestone Corporation (hereinafter Bridgestone Firestone defendants) are respectively Delaware and Nevada corporations, at all times material herein authorized to and doing business in the State of Wyoming.

7

Defendant General Motors Corporation (hereinafter General Motors) is a Michigan Corporation and Chevrolet is a Division of General Motors Corporation, (hereinafter General Motors), at all times material herein authorized to and doing business in the State of Wyoming.

## STATEMENT OF FACTS

8

On or about the 19th day of June 2006, plaintiff Michael Freidel, a guest at a ranch located near Kaycee, Wyoming, was adding air and/or in the process of attaching or removing the clip-on air chuck onto a tire which was mounted on the right rear axle, outer dual, on a 1970 Chevrolet truck manufactured by General

3

Motors. Said tire was mounted on an RH5° ring and rim assembly designed, manufactured and patented by Bridgestone Firestone, when said RH5° rim and ring assembly suddenly and unexpectedly exploded into plaintiff's face causing severe, permanent, painful and progressive injuries to plaintiff's brain, head, face, eyes, mouth, teeth, arms, soft tissues and other parts of his body.

9

The aforementioned RH5° rim and ring assembly complied with the original equipment manufacturer's specifications as originally sold and was placed into the stream of commerce by Bridgestone Firestone and General Motors. That the specific and foreseeable intended use of said RH5° rim and ring was in compliance with OEM (Original Equipment Manufacturer) specifications on the General Motors 1970 Chevrolet pick-up truck involved in the explosive separation on June 19, 2006, injuring Plaintiff Michael Freidel.

10

Bridgestone Firestone as designers, manufacturers and patent holders of the RH5° rim assembly reached an agreement with Hayes Lemmerz International, Inc., f/k/a Kelsey-Hayes, whereby Defendant Bridgestone Firestone retained the right to manufacture all RH5° rings to fit RH5° rim bases manufactured by Bridgestone Firestone and manufacturers including Hayes Lemmerz.

The RH5° side ring component injuring Plaintiff Michael Freidel on June 19, 2006 was designed, manufactured, patented and placed into the stream of commerce by Bridgestone Firestone and was originally sold and further placed into the stream of commerce by Defendant General Motors for use on Chevrolet trucks, with the following identification markings: "Firestone 20 x 6.5 RH5° - Made in USA 6-71."

4

## NEGLIGENCE OF BRIDGESTONE FIRESTONE

11

At the time of the design, manufacture, distribution and sale of the RH5° rim and ring assembly by Bridgestone Firestone and the sale of the RH5° rim and ring assembly for use on Chevrolet pick-up trucks, said RH5° multi-piece rim and ring assembly was defective in its design and manufacture. Said rim assembly had a proclivity to blow apart and explode when put to the use intended and anticipated.

12

The aforementioned proclivity was known to defendants prior to the sale of the 1970 Chevrolet pick-up truck and the 1971 rim manufacturing date involved in the explosive disassembly injuring Plaintiff Michael Freidel on June 16, 2006. Defendant Bridgestone Firestone knew or should have known that the product was defective. Defendant Bridgestone Firestone failed to warn or instruct of said defects and failed to warn that the interfacing locking surfaces of the RH5° rim and ring assembly could explode onto a user simply adding air or putting on or removing a clip-on air chuck, while the RH5° rim and ring assembly was mounted on a truck axle. That defendant Bridgestone Firestone failed to warn that the RH5° rim and ring assembly could be cocked into a position that would disengage and explode, and failed to warn that the rim and ring was obsolete and should not be used or handled.

13

The RH5° rim and ring assembly injuring Plaintiff Michael Freidel was defective and unreasonably dangerous to Plaintiff Michael Freidel because it was unsafe when put to its intended and foreseeable use in this case and that said explosion was reasonably foreseeable considering the nature and function of the product by defendants.

5

14

Defendant Bridgestone Firestone was further careless, negligent, willful and wanton in its failure to provide additional warnings, instructions and/or replace or recall said rims after it became known to defendant Bridgestone Firestone that the RH5° rim and ring assembly had a proclivity to explode even when inflated and mounted on an axle of a truck by simply adding air or putting on or removing a clip-on air chuck.

15

Defendant Bridgestone Firestone knew there were other safer alternatives available in the marketplace and was further negligent in failing to conform to the specifications in the manufacture, processing and assembly of said component parts, and that said material defects caused parts to fit improperly or otherwise become unsafe.

16

Defendant Bridgestone Firestone was further negligent in failing to inspect and test the RH5° rim and ring assembly to determine the presence of any defects this product unsafe for its intended use and for any reasonably foreseeable uses.

## NEGLIGENCE OF GENERAL MOTORS

17

At all times material herein, General Motors manufactured, assembled, sold and placed into the stream of commerce the 1970 Chevrolet truck involved in the occurrence with Plaintiff Michael Freidel on June 19, 2006, and included in the first sale of this product an OEM RH5° rim and ring assembly which complied with the same specifications as the RH5° rim and ring assembly which exploded on Plaintiff Michael Friedel on June 19, 2006.

6

18

At the time of the explosion which injured Plaintiff Michael Freidel, and for a long time prior thereto, General Motors was authorized to provide as OEM and replacement OEM RH5° rims and rings for use on its vehicles as a licenscee and/or by agreement with Bridgestone Firestone, and General Motors failed to exercise reasonable care to apprise the public and users of General Motors pick-up trucks of the availability of safer alternative rims including the single piece rim, and knew or should have reasonably known that their failures to do so would result in catastrophic injuries to foreseeable users of RH5° rim and ring components mounted on General Motors Chevrolet trucks including Plaintiff Michael Freidel.

19

Defendant General Motors was further negligent in failing to inspect and test the RH5° rim and ring assembly to determine the presence of any defects which rendered this product unsafe for its intended use and for any reasonably foreseeable uses.

20

That defendant General Motors was further careless, negligent, willful and wanton in its failure to provide additional warnings, instructions and/or replace or recall said rims after it became known to defendant General Motors that the RH5° rim and ring assembly had a proclivity to explosively disengage even when inflated and mounted on an axle of a truck by simply adding air or putting on or removing a clip-on air chuck.

## **BRIDGESTONE FIRESTONE AND GENERAL MOTORS**

21

At the time of the design, development, manufacture, patenting, distribution, licensing and sale of the subject RH5° rim and ring assembly, and prior to plaintiff's injuries, Defendants Bridgestone Firestone and General Motors knew or should have known through their agents, officers and employees that the design, configuration, materials, instructions and warnings of the RH5° rim and ring components presented an extreme and unusual hazard to the motoring public, to truck owners and users including but not limited to anyone attempting to mount, inflate, handle, store or transport an inflated RH5° rim and ring assembly. That with such knowledge Defendants Bridgestone Firestone and General Motors negligently, willfully, recklessly, fraudulently, carelessly and intentionally disregarded the safety of the motoring public and Plaintiff Michael Freidel in the following additional respects:

a.   Ignored many failures of the RH5° rim and ring components in the General Motors' factory prior to first use by anyone, and continued to provide the RH5° rim and ring as OEM component parts with such actual knowledge;

b.   Ignored and failed to promote other more available safer alternative designs of multi-piece rims and single piece rims;

c.   Manufactured, distributed and sold RH5° component parts including Bridgestone Firestone's manufacturing and selling the only available solid rings for RH5° rim and ring assembly for rim bases, specifically intended for use on General Motor Chevrolet trucks, knowing said RH5° multi-piece rim assemblies to be extremely hazardous;

d.   Failed to recall, retrofit or warn about the extreme danger of RH5° rim and ring parts following a 1970-73 investigation by the Office of Defects

8

and Investigation of the National Highway Traffic Safety Administration
in which investigation of the safety hazard of the RH5° rim and ring was
reported and documented;

e.   Refused in 1971 and previously to drop the RH5° rim and ring assembly
from production and sale even though the interfacing locking surfaces of
the rim base and ring could not be observed by users of said rim
components and said defendants continued to manufacture and sell said
RH5° rim and ring components as OEM equipment on General Motors
pick-up trucks and replacement OEM parts for General Motors pick-up
trucks knowing that they should be outlawed and illegal, and were
extremely dangerous and hazardous to the motoring public;

f.   Failed to warn that the RH5° rim and ring components could explosively
disengage even while mounted on a fully assembled wheel on the axle of
a truck by simply adding air, placing or removing a clip-on air chuck,
and have caused numerous injuries resulting in innocent users being
killed, blinded and maimed simply adding air or placing or removing a
clip-on air chuck to a tire mounted on a fully assembled RH5° rim and
ring on an axle of a truck throughout the United States and North
America;

g.   Continuing to promote the safety of the RH5° rim and ring after two
separate investigations by the Office of Defects and Investigation of the
National Highway Traffic Safety Administration, and perpetuating the use
of said RH5° multi piece wheels while at the same time selling tubes,
flaps and tires for use on said assemblies and supplying and making
available RH5° multi-piece rims and rings for 1970 and 1971 Chevrolet

pick-up trucks as OEM equipment and OEM replacement wheel
components;

h.     Failing to warn of the reputation and hazards of the RH5° rim and ring
       assemblies despite knowledge that the rim and ring assembly was known
       by experienced tire changers as "the suicide rim" and known by
       Bridgestone Firestone and General Motors that the RH5° rim and ring
       assembly was caused to have a high rate of injury and death;

i.     Failing to publicize that all RH5° rim and ring components by 1970 and
       later were known to be extremely hazardous and dangerous and were no
       longer manufactured and sold after 1974, while representing to the
       motoring public and NHTSA that RH5° rims and rings were safe and
       could last the life of the original vehicle or longer;

j.     Misrepresenting in the 1953 safety film, "The Right Way Is The Easy
       Way," that the RH5° rim and ring assembly is an acceptable and
       available multi-piece wheel which can be safely assembled and used,
       knowing such representations to be false;

k.     Representing in Bridgestone Firestone and General Motors' catalogues
       that the RH5° rim and ring assembly is an available and acceptable
       wheel component for purchase and use, specifically for 1970 and 1971
       General Motors Chevrolet trucks, so as to sell built up inventory of RH5°
       wheel assemblies knowing said rim and ring assemblies to be extremely
       hazardous to the motoring public;

l.     Suppressing the usage of proposed instructions and warning labels to be
       affixed to rim parts in order to avoid product liability exposure and
       embarrassment in the courtroom, thereby protecting Bridgestone

10

Firestone and General Motors' corporate interests and profits at the
expense of life and limb;

m.   Suppressing the single piece drop center safety rim, together with other
safer alternatives and failing to develop and promote the sale of the
single piece center drop rim in order to protect Bridgestone Firestone and
General Motors' investment in built up inventory and in tube type tire
components by its truck manufacturing equipment and plants, thereby
protecting Bridgestone Firestone and General Motors' corporate interests
and profits at the expense of life and limb;

n.   Misrepresenting facts concerning the RH5° rim and ring components in
the 1970-73 and 1978-1981 defects investigation of the RH5° rim by the
Department of Transportation;

o.   Failing to undertake a reasonable and meaningful consumer notification
and recall campaign.

22

That the RH5° rim and ring assembly involved in causing injuries to Plaintiff
Michael Freidel was defective in its design and that said defect existed when the
product left the possession of the manufacturer, Bridgestone Firestone, and the seller
and manufacturer of the Chevrolet truck, General Motors. That said defect herein
before alleged made the RH5° rim and ring components unreasonably dangerous to
users and consumers including Plaintiff Michael Freidel, and that the injuries to
Plaintiff Michael Freidel occurred from using the product in a manner that was
anticipated and/or reasonably foreseeable at the time the product left the possession
of Defendants Bridgestone Firestone and General Motors.

11

23

That Defendants Bridgestone Firestone and General Motors, were further careless and negligent in failing to provide proper warnings and instructions to consumers and users including Plaintiff Michael Freidel of the dangers associated with the use of the RH5° rim and ring assembly, and were further careless and negligent in failing to provide additional post sale warnings and instructions, after said components were manufactured and sold, and failed to advise the public that no RH5° rim and ring components were manufactured or sold after 1974 and thereby defendants and each of them breached their continuing duty to warn Plaintiff Michael Freidel, and that said breach of duty to continue to warn was a direct and proximate cause of the injuries to Plaintiff Michael Freidel.

## **BREACH OF WARRANTY AND STRICT LIABILITY**

24

That defendants breached express and implied warranties of merchantability and fitness for a particular purpose to the motoring public, and specifically to foreseeable users of RH5° rim and ring assemblies, including Plaintiff Michael Freidel.

25

At the time of Plaintiff Michael Freidel's injury, the RH5° rim and ring wheel assembly was in substantially the same condition as when it was designed, manufactured, patented, sold, distributed and placed into the stream of commerce by defendants. Said RH5° rim and ring assembly was used by plaintiff in a manner reasonably intended to be used and which Defendants Bridgestone Firestone and General Motors anticipated its use; that is, to hold and contain an inflated truck tire that would from time to time require air while mounted and assembled on the 1970 Chevrolet pick-up truck axle. That because of the aforesaid defects in the design,

12

manufacture, material, and failure to instruct and warn of the RH5° rim and ring assembly, it exploded and permanently injured Plaintiff Michael Freidel.

26

That Defendants Bridgestone Firestone and General Motors as designers, manufacturers and sellers of said RH5° rim and ring components knew or should have reasonably known that said multi-piece rim design was a product in a defective condition unreasonably dangerous to the user or consumer at the time the RH5° rim and ring assembly was sold and placed in the stream of commerce and are strictly liable to plaintiffs.

## DAMAGES

27

As a direct and proximate result of the foregoing defects, negligent, careless, willful, wanton, fraudulent and intentional conduct of defendants in the manufacturing, selling and promotion of the RH5° rim and ring assembly with actual and/or constructive knowledge of the hazards involving the foreseeable uses of said product, and the careless, negligent, intentional and willful failure to instruct, warn and/or recall the RH5° rim and ring components, Plaintiff Michael Freidel sustained painful, permanent and progressive injuries and damages.  Plaintiff Michael Freidel has in the past and will in the future suffer pain, disability, disfigurement, emotional distress and lost enjoyment of life; that Plaintiff Michael Freidel has in the past and will in the future incur a loss of earnings and a permanent loss of future earnings and future permanent diminished earning capacity; that Plaintiff Michael Freidel has in the past and will in the future incur substantial medical expenses for care and treatment of said injuries; and that Plaintiff Joanne R. Freidel, as conservator of the Estate of Michael Freidel, is responsible for payment of said past and future medical care and treatment; that Plaintiff Michael Freidel has in the past and will in the future

13

incur additional expenses for custodial care all to his damage in the amount of $50,000,000.00.

28

As a further direct and proximate result of the foregoing defects, negligence, careless, willful, wanton, fraudulent and intentional conduct of the defendants in the manufacturing, selling and promotion of the RH5° rim and ring assembly with actual knowledge of the hazards involving the foreseeable uses of said product, and the careless, negligent, intentional and willful failure to instruct, warn and/or recall the RH5° rim and ring components, Plaintiff Joanne R. Freidel, and Plaintiffs Kelsey Freidel, Jerrod Freidel, Jackson Freidel, Kylen Freidel and Hailey Freidel have in the past and will in the future sustain damages to include the permanent loss of their father Michael Freidel's care, comfort, services, support, society, companionship and relationship; that Plaintiff Joanne R. Freidel has in the past and will in the future suffer the loss of Michael Freidel's consortium, services and society, all to their damage in the amount of $20,000,000.00.

## EXEMPLARY DAMAGES

29

Because of the foregoing conduct of defendants and their willful and wanton disregard for the rights and safety of others, Defendants Bridgestone Firestone and General Motors should be punished and deterred from similar future conduct by an award of punitive damages which plaintiffs seek in the amount of $75,000,000.00.

WHEREFORE, plaintiffs pray for judgment against the defendants in a sum of $70,000,000.00 for actual, compensatory, derivative damages and further sum of $75,000,000.00 for punitive damages, together with their costs and disbursements

14

incurred herein and for such other and further relief the Court deems just and

equitable including pre and post verdict interest and costs.

SCHWEBEL GOETZ & SIEBEN, P.A.

William R. Sieben (#100808)
Paul E. Godlewski (#35567)
Alicia N. Sieben (#0389640)
ATTORNEYS FOR THE PLAINTIFFS
5120 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2246
Telephone: 612-377-7777

ATTORNEYS FOR PLAINTIFFS

-AND-

DATED: May 22 _____, 2009

James E. Fitzgerald
THE FITZGERALD LAW FIRM
2108 Warren Avenue
Cheyenne, Wyoming 82001
(307) 634-4000

# Exhibit

# 1

STATE OF SOUTH DAKOTA       )          IN CIRCUIT COURT
                            ) ss
COUNTY OF CLAY              )          FIRST JUDICIAL CIRCUIT

IN THE MATTER OF THE GUARDIANSHIP          GDN. 07-11
AND CONSERVATORSHIP OF

                                           ORDER APPOINTING
MICHAEL J. FREIDEL,                        GUARDIAN
A Person Alleged to Need Protection.

A hearing on the Petition for the appointment of a guardian for Michael J. Freidel was held on May 16, 2007, at 9:30 AM, at the Clay County Courthouse, Vermillion, South Dakota, and Michael J. Freidel, the person alleged to need protection did not appear personally and was represented by his attorney, Michael J. Myers.

The court heard the testimony and received the documents on file and finds that the notice has been properly served upon Michael J. Freidel and otherwise given to all interested persons as required by law and the Order of this Court.

The Court has duly considered Michael J. Freidel's ability to respond to people, events, and environments and finds that Michael J. Freidel is impaired to such an extent that he lacks the capacity to: meet the essential requirements of health, care, safety, habilitation or therapeutic needs without the assistance or protection of a guardian. The Court finds the appointment necessary to protect Michael J. Freidel from neglect, exploitation and abuse and there are no less restrictive alternatives and the Court having made its findings of fact and conclusions of law, Joanne R. Freidel is suitable and qualified to serve as guardian.

CLAY COUNTY SOUTH DAKOTA
OFFICE OF CLERK OF COURTS
FILED

MAY 1 6 2007

Robin Iverson
CLERK

IT IS ORDERED:

1.    Joanne R. Freidel, is appointed as the Guardian of Michael J. Freidel. The appointment shall continue until resignation by the guardian or further order of the Court.

2.    Letters of Guardianship shall issue to Joanne R. Freidel upon the filing of an Acceptance of Office.

3.    The Guardian shall have the authority to make decisions regarding the protected persons support, care, health, habilitation, therapeutic treatment, and, if not inconsistent with an order of commitment or custody, determine the protected person's residence.

4.    The Guardian shall maintain sufficient contact with the protected person to know of the protected person's capabilities, limitations, needs, and opportunities. The Guardian shall exercise her authority only to the extent necessitated by the protected person's limitations, and if feasible, shall encourage the protected person to participate in decisions, to act on his own behalf, and to develop or regain the capacity to manage his own personal affairs. The Guardian shall, to the extent known, consider the express desires and personal values of the protected person when making decisions and shall otherwise act in the protected person's best interests and exercise reasonable care, diligence, and prudence.

5.    The Guardian shall file an annual report to the Court within sixty (60) days following the anniversary of the appointment, annually thereafter, cr on a calendar-year basis not later than May 16 of each year. Within fourteen days after filing the annual report, a copy of the annual report shall be mailed to all individuals and entities listed in the petition or as required by law. The report shall state:

a.      The current mental, physical, and social condition of the protected person;

b.      The living arrangements during the reporting period;

c.      The medical, educational, vocational, and other professional services provided to

the protected person and the guardian's evaluation as to the adequacy of the care;

d.      A summary of the guardian's visits with and activities on the protected person's

behalf;

e.      Guardian's opinion of the current treatment or habilitation plan;

f.      Guardian's recommendation as to the need for a continued guardianship and

recommended changes in the scope of the guardianship;

g.      The compensation requested and the reasonable and necessary expenses incurred

by the guardian.

Dated this ___16th___ day of May, 2007.

BY THE COURT:

Hon. Steven R. Jensen

Circuit Court Judge

ATTEST:

Clerk of Courts
by Jessica Basse, Dep

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | ) ss | |
| COUNTY OF CLAY | ) | FIRST JUDICIAL CIRCUIT |

IN THE MATTER OF THE GUARDIANSHIP
AND CONSERVATORSHIP OF

GDN. 07-11

MICHAEL J. FREIDEL,
A Person Alleged to Need Protection.

LETTERS OF GUARDIAN
AND CONSERVATORSHIP

By Order of the Court, Joanne R. Freidel was appointed Guardian and

Conservator of Michael J. Freidel, a protected person, on the 16th day of May, 2007.

The Letters are issued as evidence of the appointment, qualification and authority

of Joanne R. Freidel to do and perform all acts authorized by law.

Dated this __16th__ day of May, 2007.

BY THE COURT:

Hon. Steven R. Jensen
Circuit Court Judge

ATTEST:

Clerk of Courts by Jessica Borseleep

STATE OF SOUTH DAKOTA
First Judicial Circuit Court
I hereby certify that the foregoing instrument is a true
and correct copy of the original as the same appears on
file in my office and the same is still in full force and effect.

MAY 1 6 2007

Robin Iverson
Clay County Clerk of Courts
By: _____

CLAY COUNTY, SOUTH DAKOTA
OFFICE OF CLERK OF COURTS
FILED

MAY 1 6 2007

Robin Iverson
CLERK

STATE OF SOUTH DAKOTA      )            IN CIRCUIT COURT
                          ) ss
COUNTY OF CLAY            )            FIRST JUDICIAL CIRCUIT

IN THE MATTER OF THE GUARDIANSHIP            GDN. 07-11
AND CONSERVATORSHIP OF

                                            ACCEPTANCE OF
MICHAEL J. FREIDEL,                         OFFICE
A Person Alleged to Need Protection.

I accept the appointment of Guardian of Michael J. Freidel and will perform the

duties of Office in accordance to law and Order of the Court, and will submit to the

personal jurisdiction of this Court in any proceeding relating to Michael J. Freidel

instituted by any interested person.

Dated _5 76 - 07_

                                    _Joanne R. Freidel_
                                    Joanne R. Freidel

CLAY COUNTY, SOUTH DAKOTA
OFFICE OF CLERK OF COURTS
FILED

MAY 1 6 2007

_Robin Iverson_
CLERK